IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT HARVEY | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO. ____________ |
| v. | § | |
| | § | ____________________________ |
| WILLIAM ROY, in his individual capacity; | § | |
| and | § | ("JURY REQUESTED") |
| CITY OF GALVESTON | § | |
| aka | § | |
| GALVESTON FIRE DEPARTMENT | § | |
| *Defendants* | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

COMES NOW, ROBERT HARVEY, complaining of Battalion 4 Fire Chief WILLIAM ROY and the CITY OF GALVESTON and for cause of action would respectfully show unto this Honorable Court as follows:

## I. NATURE OF THE CASE

1. This is a civil action arising under the United States Constitution, particularly under the provisions of the Due Process Clause and the Fourth and Fourteenth Amendments to the Constitution of the United States, and under federal law, particularly the Civil Rights Act, Title 42 of the United States Code § 1983, seeking damages against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United States.

2. Alternatively, this is a civil action arising under the laws of the State of Texas for negligence and the Texas Tort Claims Act as set out in Chapter 101 *et seq* of the Texas Civil Practice and Remedies Code.

## II. PARTIES

3. Plaintiff, ROBERT HARVEY (**"Plaintiff"**), is a citizen of the United States and currently resides in Galveston County, Texas.

4. Defendant, Battalion 4 Fire Chief WILLIAM ROY (**"Chief Roy"**), is employed by the Galveston Fire Department and was acting within the scope of his employment and under color of statutes, ordinances, rules and regulations, customs and usage of the CITY OF GALVESTON. At the time of the incident, Chief Roy assumed his role as a Battalion Chief of Battalion 4 of the City of Galveston Fire Department. Chief Roy can be served with process by delivering a copy of the summons and complaint at an address to be provided under seal due to his role as a city official.

5. Defendant CITY OF GALVESTON a/k/a GALVESTON FIRE DEPARTMENT (**"City of Galveston"**) is a municipal governmental entity located in Galveston, Galveston County, Texas, and may be served by serving its City Attorney Donald Glywasky, at 823 Rosenberg Street, Galveston, Texas 77553, or by mail at P.O. Box 779, Galveston, Texas 77553.

6. Although Plaintiff may refer to Defendants collectively at times, specific factual references are made concerning actions or inactions by specific Defendants throughout this Complaint – these are not global allegations. As such, this pleading complies with current federal standards. FED. R. CIV. P. 8.

## III. JURISDICTION

7. This action is brought pursuant to 42 U.S.C § 1983, the Due Process Clause and the Fourth and Fourteenth Amendments to the United States Constitution. This Court has

jurisdiction of this action under 28 U.S.C. §§ 1331 and 1343. This Court also has supplemental jurisdiction to hear the state claims that will be set forth in this complaint.

## IV. VENUE

8. Venue is proper in this district under 28 U.S.C. 1391(b) because the acts, events, or omissions giving rise to this claim occurred in Galveston, Galveston County, Texas, which falls within the jurisdiction served by the United States Court for the Southern District of Texas, Galveston Division.

## IV. FACTUAL BACKGROUND

9. Early in the morning on June 22, 2024, Plaintiff and his friend were walking southbound on the 61st Street sidewalk in Galveston, Texas. Plaintiff was staying safely on the sidewalk away from traffic. Both Plaintiff and his friend were recording their activities on their cell phones at the time of this incident, and the relevant portion of Plaintiff's recording is attached to this Complaint as Exhibit A (**"Plaintiff's Recording"**).

10. Chief Roy, while on duty as the Battalion Chief of Battalion 4 of the Galveston Fire Department, was parked in a Galveston Fire Department pickup truck (**"GFD Truck"**), issued to him by the City of Galveston, on the western shoulder of 61st Street.

11. As Plaintiff and his friend walked on the pedestrian right-of-way past the GFD Truck, Chief Roy blasted his siren multiple times for no discernible reason, injuring Plaintiff's eardrums.

12. Plaintiff and his friend complained loudly and demonstrably at Chief Roy and other firefighters on the scene, and demanded that Chief Roy give them Chief Roy's name and badge number.

13. Instead of identifying himself, Chief Roy backed his truck into the road, angled it towards Plaintiff, and then accelerated his truck into the pedestrian walkway where Plaintiff was standing, striking Plaintiff with the GFD Truck.

14. Plaintiff attempted to back out of the way of the truck, but was struck in the arm and shoulder by the large passenger-side mirror of the GFD Truck, causing bodily injury to Plaintiff. This impact can be seen and heard on Plaintiff's Recording. (Exhibit A).

15. Plaintiff then got the attention of several nearby City of Galveston employees, including firefighters and police officers, stating that he had been assaulted by the driver of the GFD Truck and needed medical attention.

16. Chief Roy left the scene approximately one minute after striking Plaintiff, without providing his information or checking on Plaintiff's condition or the condition of his vehicle.

17. Chief Roy was later called back to the scene and questioned, but was allowed to leave the scene again without a citation. Plaintiff suspected Chief Roy was drunk, and Chief Roy submitted to a urinalysis, but, inexplicably, the sample was not tested for alcohol.

18. On information and belief, the City of Galveston did not test for alcohol in order to protect itself and Chief Roy from liability in this case.

19. Plaintiff presented a criminal complaint with the Galveston Police Department, a subdivision of the City of Galveston, against Chief Roy, complaining of assault with the GFD Truck.

20. The Galveston Police Department "investigated" this collision and determined that no collision had taken place, and if it did, Chief Roy did not do it intentionally. Chief Roy was not disciplined by the City of Galveston, and the Galveston County District Attorney's

Office administratively closed the case. Chief Roy is still employed by the City of Galveston as the Battalion Chief of Battalion 4 of the Galveston Fire Department.

21. The collision between the GFD Truck and Plaintiff's arm and tripod are demonstrated on Plaintiff's Recording. (Exhibit A). Plaintiff's medical records also show injuries consistent with being struck by a truck in the arm and shoulder on the date in question. This evidence was provided to Galveston Police investigators.

22. Chief Roy was not wearing a bodycam, and no dashcam footage from the GFD Truck was reviewed by City of Galveston investigators. The City of Galveston has represented to Plaintiff that no such video footage exists.

23. Detective A. Rogers of the Galveston Police Department reported in his criminal investigation notes that he reviewed a surveillance video from a local business, Zendeh Del and Associates, in which it is "obvious" that the GFD Truck "does not strike the body of Robert Harvey."

24. This video was not actually reviewed by Detective A. Rogers or any other representative of the City of Galveston, because it does not exist. Plaintiff's attorney contacted the business owner and asked for a copy of the video, and was told that the video does not exist. When asked if a video had been provided to law enforcement, the business representative stated that they do not believe that they provided a video to law enforcement.

25. Plaintiff's attorney then submitted a public information request to the City of Galveston asking for documentation and footage related to this incident and specifically requesting this alleged video. Plaintiff's attorney was twice informed by the City of Galveston that "GPD is not in possession of the surveillance video from Zendeh Del and Associates."

26. All of Detective A. Rogers's bodycam recordings of his investigation, including all interviews with potential witnesses, were "lost in the system and not able to be recovered." Only his personal summaries of these interviews remain.

27. The City of Galveston has therefore lost or destroyed all relevant video evidence in its investigation, protecting itself and Chief Roy from liability.

28. On August 28, 2024, Plaintiff sent the City of Galveston notice of his claim as required by Texas Civil Practice and Remedies Code § 101.021. As demonstrated by the facts cited above, however, representatives of the City of Galveston had actual knowledge of Plaintiff's injuries and the City of Galveston's potential culpability immediately after the incident occurred.

29. As a direct and proximate result of the collision caused by Chief Roy, Plaintiff has sustained substantial damages. The impact caused Plaintiff pain and required him to seek medical attention. Plaintiff went to the emergency room following the collision, and was then referred to specialists for his ears, arm, shoulder, and back. After a couple of weeks of conservative treatment, the pain in Plaintiff's shoulder, back, neck, and ears continued to get worse. Plaintiff will require future care to correct his medical conditions and treat his ongoing disabilities. Plaintiff has herniated discs, torn ligaments, headaches, and hearing loss. These injuries and accompanying medical findings are classified by the American Medical Association's *Guide to the Evaluation of Permanent Impairment (6th ed.)* as a permanent impairment.

15. A Battalion Chief is a senior-level official within the Galveston Fire Department, under only the Fire Chief and Assistant Fire Chief. Battalion chiefs are policymakers within the Galveston Fire Department, responsible for setting and implementing policy regarding operations, training, and discipline within their battalion.

16. The City of Galveston, including the Galveston Fire Department and the Galveston Police Department, investigated the incident in this complaint, including the video footage (Exhibit A) and medical records provided by Plaintiff. The City of Galveston determined that there was no wrongdoing of any kind; refused to compensate Plaintiff for his injuries; refused to test Chief Roy for alcohol; refused to discipline, retrain, or terminate Chief Roy; and refused to recommend Chief Roy for criminal charges.

## V. CAUSES OF ACTION

### A. 42 USC §1983 — EXCESSIVE FORCE

17. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

18. Plaintiff sues Defendant William Roy for the unlawful use of excessive force under 42 U.S.C. §1983. To prevail in a claim under §1983, a plaintiff must prove a) that his constitutional rights were violated, and b) that the violation was caused by a person acting under color of law. *West v. Atkins*, 487 U.S. 4242 (1988).

19. "The right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process. The right has also been premised on the fourth amendment guarantee of '(The) right of … people to be secure in their persons,' made applicable to the states by the fourteenth amendment." *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981) (internal citations omitted).

20. If a government official's action "caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983." *Shillingford*, 634 F.2d at 265. "Actions permissible in controlling a riotous mob or in

dealing with a life-threatening situation might weigh differently when taken against a peaceful pedestrian." *Id.*

21. Chief Roy used excessive and/or deadly force in the course of Chief Roy's duties at the scene of the incident in intentionally striking Plaintiff with the GFD Truck in violation of the Fourth Amendment and its "reasonableness" standard. To establish that the Defendant violated Plaintiff's constitutional right to be free from excessive force, Plaintiff must show: a) an injury; b) which resulted from the use of force that was clearly excessive to the need; and c) the excessiveness of which was objectively unreasonable. *See Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2001).

22. Plaintiff suffered multiple injuries as a direct result of the Defendant's actions, including herniated discs, torn ligaments, headaches, and hearing loss, all of which resulted in medical bills, pain and suffering, loss of abilities, and other general and special damages.

23. Defendant William Roy's actions were clearly excessive to the need. Oral commands to the Plaintiff would have achieved Chief Roy's goals without the need for force at all.

24. The excessiveness of the force used by Chief Roy was objectively unreasonable. Plaintiff was suspected of no crimes, was not interfering with Chief Roy's duties, and was not near the scene of an emergency. Chief Roy was merely annoyed by the Plaintiff's lawful presence, and, inspired by malice, attempted to run him over. Chief Roy was not making a split-second decision. He had plenty of time to assess the circumstances and conditions as he slowly backed into the road and prepared to drive forward. He was not at the scene of an emergency. Instead, he left the roadway so that he could assault the Plaintiff in a parking lot out of the roadway. He did not even need to be in the parking lot, as he left the scene soon after, having accomplished nothing but his assault. These facts were easily ascertainable by any reasonable law enforcement officer and are clearly established by video evidence. No reasonable investigator would have believed that running over Plaintiff

was necessary or excusable under the circumstances. Use of deadly force against an nonthreatening suspect is objectively unreasonable. *See, e.g., Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2002) (holding that when a suspect had "stopped advancing and did not pose a threat to anyone but himself, the force used against him, i.e. deadly force, was objectively excessive.")

25. Chief Roy was acting under color of law because he was purporting to act in the scope of his employment as a policymaker with the Galveston Fire Department at the time of this incident and with the authority provided by that agency.

26. Defendant William Roy's actions in this incident satisfy all of the elements of an excessive force claim under 42 U.S.C. §1983.

**B. 42 USC §1983 — NO QUALIFIED IMMUNITY**

27. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

28. Defendant William Roy may claim that he is entitled to qualified immunity against a §1983 claim. In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-part test for determining whether or not qualified immunity applies: a) do the facts indicate that a constitutional right has been violated, and b) was that right clearly established at the time of the alleged conduct. When such a right has been violated, qualified immunity does not apply. *Id*.

29. The facts of this incident indicate that Chief Roy violated Plaintiff's Fourth Amendment right against unreasonable seizure. Intentionally striking Plaintiff with the GFD Truck is a "seizure" governed by the objective reasonableness standard of the Fourth Amendment, as described above. Chief Roy had no reasonable basis to suspect that Plaintiff was an imminent threat to anyone or would interfere with City of Galveston activities in any way if he was not assaulted.

30. The right of Plaintiff to be free from being intentionally struck by a vehicle when he posed no threat to anyone is clearly established, and has been for decades. *See, e.g., Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) (holding that "where a police officer uses a police vehicle to terrorize a civilian, and he has done so with malicious abuse of official power shocking to the conscience, a court may conclude that the officers have crossed the 'constitutional line.'"). The central concept is that of "fair warning": The law can clearly be established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (internal quotation marks omitted); *see also Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc; holding that a clearly established law is one where a prior decision provided reasonable warning that the conduct violated federal law).

31. Because Defendant William Roy violated Plaintiff's clearly established Fourth Amendment right against unreasonable seizure by using objectively unreasonable force clearly established by decades of court precedence, Defendant William Roy is not entitled to qualified immunity under *Saucier*.

**C. 42 USC §1983 — CITY OF GALVESTON'S LIABILITY UNDER MONELL**

*i. Actions by a City of Galveston Policymaker*

32. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

33. In order to hold a municipality such as the City of Galveston liable under §1983, a plaintiff must demonstrate that the constitutional deprivation was the product of a policy or custom of the local governmental unit. *See, e. g., Pembaur v. Cincinnati*, 475 U.S. 469 (1986). The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *See Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978). "Official municipal policy includes the decisions of a

government's lawmakers [and] the acts of its policymaking officials . . ." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

34. Defendant City of Galveston is liable to Plaintiff because Plaintiff's constitutional rights were violated due to the intentional actions of one of the City of Galveston's policymakers while serving in his official capacity and making decisions consistent with his authority. *See Brown v. Bryan Cnty.*, 219 F.3d 450, 462 (5th Cir. 2000) ("a single decision by a policy maker may, under certain circumstances, constitute a policy for which the County may be liable."); s*ee also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, (1986) ("it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."). The *Pembaur* Court further explained:

> a government frequently chooses a course of action tailored to a particular situation and not intended to control decisions in later situations. If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood. More importantly, where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly. To deny compensation to the victim would therefore be contrary to the fundamental purpose of § 1983.

*ii. Ratification by the City of Galveston*

35. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

36. Defendant City of Galveston is further liable to Plaintiff under *Monell* because policymakers within the City of Galveston ratified the acts that form the basis of Plaintiff's

§1983 claim against Defendant William Roy. Ratification is an alternative basis of municipal liability under *Monell*. *See Young v. Bd. of Supervisors of Humphreys Cnty.*, 927 F.3d 898, 903 (5th Cir. 2019) ("One way of establishing liability is to show that a policymaker ratified the acts of a subordinate."); *see also Covington v. City of Madisonville*, 812 F. App'x 219, 228-29 (5th Cir. 2020) (reversing the dismissal of a ratification claim under *Monell* where the policymakers had covered up the perpetrator's misconduct and failed to turn over recordings to investigators).

37. Ratification can be demonstrated by lack of discipline:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004) (*quoting City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). Chief Roy was "investigated" by two divisions of the City of Galveston, the Galveston Fire Department and the Galveston Police Department. Chief Roy's conduct was reviewed by his supervisors within the Galveston Fire Department, which are the Fire Chief and Assistant Fire Chief, the final policymakers within the Galveston Fire Department. Each investigator and reviewer had access to witness testimony, video evidence (including Plaintiff's Recording), and Plaintiff's medical records related to the incident. Each was fully aware of Chief Roy's conduct and motivations. Rather than take any remedial action, the City of Galveston covered up Chief Roy's conduct. Chief Roy was not disciplined or retrained, and he still has the same role as Battalion Chief in the Galveston Fire Department. Chief Roy suffered no negative consequences as a result of his wrongful conduct.

38. In addition to being its own basis for liability, ratification can also serve as evidence of municipal policy: "The failure to take disciplinary action in response to [illegal conduct], when combined with other evidence, could tend to support an inference that there was a preexisting de facto policy of [illegal conduct]: the policymaker did not discipline the employee because, in the policymakers' eyes, the employee's illegal conduct actually conformed with municipal policy." *Milam*, 113 F. App'x at 628 (5th Cir. 2004); *see also McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (suggesting that failure of officials to admit the employees' conduct was in error could be interpreted as a municipal policy.)

39. The policymakers within the City of Galveston ratified Chief Roy's obvious violation of Plaintiff's Fourth Amendment rights after the incident, and the City of Galveston is therefore liable under 42 U.S.C. § 1983 and *Monell*.

## D. NEGLIGENCE AND GROSS NEGLIGENCE – CHIEF ROY

40. Plaintiff hereby adopts, incorporates, restates, and re-alleges paragraphs 1-16, inclusive, with regard to these causes of action.

41. Pleading cumulatively and alternatively, and without waiving any other cause of action, Chief Roy was negligent and grossly negligent in striking Plaintiff with the GFD Truck.

*i. Negligence*

42. The elements of a negligence claim in Texas are "(1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 144 (Tex. 2022)

43. Drivers in Texas have a duty to exercise reasonable care, based on a standard of care that would be used by a person of ordinary prudence under the same or similar circumstances, to avoid foreseeable risks of harm to others on the road, including drivers and pedestrians. *Gator Gone Safety Pilots v. Holt*, 622 S.W.3d 524, 539 (Tex. App.—

Houston [14th] 2021, no pet.). The Texas legislature has explicitly extended this duty to the operators of emergency vehicles. Texas Transportation Code § 546.005.

44. In the present case, Chief Roy's actions of accelerating into a parking lot where he knows there are pedestrians and subsequently striking one of them with his GFD Truck demonstrates a failure to exercise the ordinary care that a reasonably prudent person would have used under the same circumstances.

45. Striking a pedestrian in these circumstances is a reasonably foreseeable result of Chief Roy's actions, and the injuries sustained by Plaintiff are a reasonably foreseeable result of a pedestrian being struck by the GFD Truck.

46. Therefore, Chief Roy was negligent in accelerating into a parking lot where he knows there are pedestrians present.

47. Chief Roy's negligence cause Plaintiff's injuries, and Plaintiff is entitled to recover for these injuries.

48. Additionally, Defendants' actions were done with reckless disregard of substantial risk of severe bodily injuries. As such, Plaintiff is entitled to exemplary damages.

*ii. Gross Negligence*

49. Gross negligence has two elements in Texas: (1) viewed objectively from the actor's standpoint, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

50. In the present case, Chief Roy's actions of accelerating into a parking lot across a pedestrian right-of-way, where he knows there are pedestrians and where pedestrians are

likely to be present, involves an extreme degree of risk considering the probability and magnitude of potential harm to the pedestrians.

51. Chief Roy had actual knowledge of the Plaintiff's presence directly in his path where Chief Roy accelerated his vehicle. Despite this awareness, Chief Roy proceeded to accelerate towards Plaintiff, demonstrating a conscious indifference to the rights, safety, or welfare of Plaintiff and other pedestrians.

52. The objective risk to Plaintiff and others in this situation, combined with Chief Roy's subjective awareness of Plaintiff's presence and the extreme degree of risk involved, represents gross negligence on the part of Chief Roy.

53. Because Chief Roy was grossly negligent in causing Plaintiff's injuries, Plaintiff is entitled to exemplary damages.

## E. NEGLIGENCE *PER SE* – CHIEF ROY

54. Plaintiff hereby adopts, incorporates, restates, and re-alleges paragraphs 1-16 and 40-53, inclusive, with regard to this cause of action.

55. "To establish negligence per se, a plaintiff must prove: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury." *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th] 2000, pet. denied), *citing El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987).

56. Defendants' conduct described herein constitutes an unexcused breach of the duty imposed by Texas Transportation Code §§ 545.103, 545.401, 545.428, and 546.005.

57. Plaintiff is a member of the class of persons that Texas Transportation Code §§ 545.103, 545.401, 545.428, and 546.005 were designed and promulgated to protect.

58. Chief Roy's unexcused breach of the duties imposed by Texas Transportation Code Sections 545.103, 545.401, 545.428, and 546.005 proximately caused Plaintiff's injuries.

59. Chief Roy was therefore negligent *per se* and is liable to Plaintiff for his injuries.

**F. TEXAS TORT CLAIMS ACT – CITY OF GALVESTON**

60. Plaintiff hereby adopts, incorporates, restates, and re-alleges all paragraphs 1-16 and 40-59, inclusive, with regard to this cause of action.

61. Under Tex. Civ. Prac. and Rem. Code § 101.021(1), a governmental unit in the state of Texas is liable for property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment. and the employee would be personally liable to the claimant according to Texas law.

62. Plaintiff sustained personal injury arising from the wrongful act or omission or negligence of Chief Roy using a motor-driven vehicle.

63. Chief Roy was acting within the scope of his employment at the time of the collision complained of in this Complaint.

64. Chief Roy would be personally liable to Plaintiff under Texas law as described above.

65. Defendant City of Galveston had actual and subjective notice of the injuries to the Plaintiff and the Defendants' potential liability immediately upon the occurrence of the collision. Plaintiff also sent notice to Defendant City of Galveston as required by law.

66. Therefore, Defendants' actions and omissions, negligence, gross negligence, and conscious indifference as recited above are also violative of the Texas Tort Claims Act, as set out in Chapter 101 et seq of the Texas Civil Practice and Remedies Code. Pursuant to

Tex. Civ. Prac. and Rem. Code § 101.25, these governmental entities have waived sovereign immunity and are liable for the damages Plaintiff sustained as a result of the collision.

## VI. DAMAGES

67. Plaintiff hereby adopts, incorporates, restates, and re-alleges all previous paragraphs, inclusive, with regard to all causes of action.

68. As a result of Defendant' statutory and constitutional violations, Plaintiff has suffered serious and substantial damages and injuries as described herein, which must be determined by the finder of fact.

## VII. ATTORNEY'S FEES AND COSTS

69. Pursuant to the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, Plaintiff asserts right to an award of attorney's fees and costs under its 42 U.S.C. § 1983 pleadings if he prevails.

## VIII. RELIEF REQUESTED

70. For these reasons, Plaintiff prays for judgment against Defendants, any or all of them, for following:

a) Actual damages;

b) Pre-judgment and post-judgment interest;

c) Punitive and exemplary damages against Defendant in an amount to be determined and as allowed by the Court. *See Smith v. Wade*, 461 U.S. 30 (1983);

d) Costs of Court; and

e) Such other and further relief as the Court deems just and equitable.

## IX. JURY DEMAND

71. Plaintiff respectfully demands trial by jury and has tendered the appropriate fee for the same.

## X. PRAYER

72. WHEREFORE, Plaintiff respectfully requests Defendant be cited to appear and answer herein, and that upon final trial hereof, the Court award the relief against Defendant.

73. Plaintiff further respectfully request that he be afforded all due expediency within the discretion of this Honorable Court to facilitate the preservation of evidence, to demonstrate that such unconscionable conduct will not be tolerated in a civilized society, and to ensure that justice may be served.

Respectfully submitted,

***/s/ Benjamin S. Campagna***
BENJAMIN S. CAMPAGNA
Federal ID No. 3822709
Texas Bar No. 24078302
Email: ben@txattorneygroup.com

***/s/ David Bleakney***
DAVID BLEAKNEY
Federal ID No. 3749624
Texas Bar No. 24103798
Email: david@txattorneygroup.com

TX Attorney Group, PLLC
405 Main Street, Suite 1000
Houston, TX 77002
Telephone: (281) 815-0387
Facsimile: (281) 612-3006
e-Service Email: e-service@txattorneygroup.com

**ATTORNEYS FOR PLAINTIFF**