UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT HARVEY,<br>*Plaintiff*, | §<br>§ | |
| v. | § | Civil Action No. 3:25-cv-00058 |
| | § | |
| WILLIAM ROY, IN HIS INDIVIDUAL CAPACITY; CITY OF GALVESTON, AKA THE GALVESTON FIRE DEPARTMENT<br>*Defendants*. | §<br>§<br>§ | |

DEFENDANTS' OPPOSED MOTION FOR FINAL SUMMARY JUDGMENT

Defendants Galveston Fire Department Battalion Chief William Roy and the City of Galveston ("City"), sued directly, sued through the City of Galveston fire department, and sued through Chief William Roy in his respective official capacity, move under FED. R. CIV. P. 56 to dismiss all of Plaintiff's claims and enter final judgment in Defendants' favor.

CERTIFICATE OF CONFERENCE

1. The parties counsel conferred, and Plaintiff opposes the relief sought in this motion.

TABLE OF CONTENTS

CERTIFICATE OF CONFERENCE ........ I
TABLE OF CONTENTS ........ II
TABLE OF AUTHORITIES ........ III
TABLE OF EXHIBITS ........ III
SUMMARY OF THE ARGUMENT ........ 1
NATURE AND STAGE OF THE PROCEEDING ........ 1
STATEMENT OF FACTS ........ 1
SUMMARY JUDGMENT STANDARD ........ 6
ARGUMENT AND AUTHORITIES ........ 7
I. NO EVIDENCE SUPPORTS A FOURTEENTH AMENDMENT CLAIM. ........ 7
II. PLAINTIFF FAILS TO REFUTE BATTALION CHIEF ROY'S QUALIFIED IMMUNITY. 10
III. NO EVIDENCE SUPPORTS RATIFICATION CLAIM AGAINST THE CITY. ........ 13
A. Galveston's City Council is the City's policymaker. ........ 14
B. There is no evidence the City's policymaker ratified unconstitutional conduct, much less under the facts here which are unlike the "extreme factual situation" for which this claim is reserved. ........ 16
IV. THERE IS NO EVIDENCE THAT SUPPORTS A CLAIM AGAINST THE CITY UNDER TEXAS LAW. ........ 18
A. Chief Roy's use of the siren when leaving the scene provides no basis for waiver of the City's governmental immunity. ........ 19
B. Plaintiff's claims are barred by TEX. CIV. PRAC. & REM. CODE 101.055. ... 20
C. Plaintiff's claims are barred by TEX. CIV. PRAC. & REM. CODE § 101.021. . 23
CONCLUSION AND PRAYER ........ 24
CERTIFICATE OF SERVICE ........ 25

TABLE OF AUTHORITIES

**Federal Cases**

*Allen v. Hays*,
65 F.4th 736 (5th Cir. 2023) ....................25

*Anderson v. Creighton*,
483 U.S. 635 (1987) ....................25

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ....................25

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) ....................25

*Atteberry v. Nocona Gen. Hosp.*,
430 F.3d 245 (5th Cir. 2005) ....................25

*Benfer v. City of Baytown*,
120 F.4th 1272 (5th Cir. 2024) ....................25

*Bolton v. City of Dallas*,
541 F.3d 545 (5th Cir. 2008) ....................25

*Brown v. City of Houston*,
337 F.3d 539 (5th Cir. 2003) ....................25

*Brown v. Lyford*,
243 F.3d 185 (5th Cir. 2001) ....................25

*Brumfield v. Hollins*,
551 F.3d 322 (5th Cir. 2008) ....................25

*Bustillos v. El Paso Cnty. Hosp. Dist.*,
891 F.3d 214 (5th Cir. 2018) ....................25

*Butz v. Economou*,
438 U.S. 478 (1978) ....................25

*Carnaby v. City of Houston*,
636 F.3d 183 (5th Cir. 2011) ....................25

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) ....................25

*Club Retro LLC v. Hilton*,
568 F.3d 181 (5th Cir. 2009) ....................25

*Coleman v. Houston Indep. Sch. Dist.*,
113 F.3d 528 (5th Cir. 1997) ....................25

*Coon v. Ledbetter*,
780 F.2d 1158 (5th Cir. 1986)....................25

*Cty. of Sacramento v. Lewis*,
523 U.S. 833 (1998)....................25

*Daniels v. Williams*,
474 U.S. 327 (1986) ....................25

*Davidson v. City of Stafford*,
848 F.3d 384 (5th Cir. 2017)....................25

*District of Columbia v. Wesby*,
583 U. S. 48 (2018)....................25

*Escondido v. Emmons*,
586 U. S. 38 (*per curiam*) ....................25

*Est. of Parker v. Miss. Dep't of Pub. Safety*,
140 F.4th 226 (5th Cir. 2025) ....................25

*Eversley v. Mbank*,
843 F.2d 172 (5th Cir. 1988) ....................25

*Forgan v. Howard Cnty.*,
494 F.3d 518 (5th Cir. 2007)....................25

*Grandstaff v. Borger*,
767 F.2d 161 (5th Cir. 1985) ....................25

*Groh v. Ramirez*,
540 U.S. 551 (2004) (Kennedy, J., dissenting) ....................25

*Hart v. O'Brien*,
127 F.3d 424 (5th Cir. 1997)....................25

*Hobart v. City of Stafford*,
916 F. Supp. 2d 783 (S.D. Tex. 2013) (Ellison, J.)....................25

*Kisela v. Hughes*,
584 U. S. 100 (2018) (*per curiam*) ....................25

*M.D. v. Abbott*,
907 F.3d 237 (5th Cir. 2018) ....................25

*Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*,
675 F.3d 849 (5th Cir. 2012) ....................25

*Martinez v. Maverick County*,
507 Fed. Appx. 446 (5th Cir. 2013) ....................25

*McClendon v. City of Columbia*,
305 F.3d 314 (5th Cir. 2002) ....................25

*Morgan v. Swanson*,
659 F.3d 359 (5th Cir. 2011) ....................25

*Morris v. Dearborne*,
181 F.3d 657 (5th Cir. 1999) ....................25

*Morrow v. Meachum*,
917 F.3d 870 (5th Cir. 2019) ....................25

*Pearson v. Callahan*,
555 U.S. 223 (2009) ....................25

*Perdomo v. City of League City, Texas*,
163 F.4th 921 (5th Cir. 2026) ....................25

*Peterson v. City of Fort Worth*,
588 F.3d 838 (5th Cir. 2009) ....................25

*Pfannstiel v. City of Marion*,
918 F.2d 1178 (5th Cir. 1990) ....................25

*Ramirez v. Guadarrama*,
3 F.4th 129 (5th Cir. 2021) ....................25

*Reichle v. Howards*,
566 U.S. 658 (2012) ....................25

*Renfroe v. Parker*,
974 F.3d 594 (5th Cir. 2020) ....................25

*Rochin v. California*,
342 U.S. 165 (1952) ....................25

*Saldana v. Garza*,
684 F.2d 1159 (5th Cir. 1982)....................25

*Scott v. Harris*,
550 U.S. 372 (2007) ....................25

*Smith v. Harris County*,
956 F.3d 311 (5th Cir. 2020) ....................25

*Sorenson v. Ferrie*,
134 F.3d 325 (5th Cir. 1998) ....................25

*Swint v. Chambers County Commission*,
514 U.S. 35 (1995)....................25

*Taylor v. Gregg*,
36 F.3d 453 (5th Cir. 1994) ....................25

*Tharling v. City of Port Lavaca*,
329 F.3d 422 (5th Cir. 2003) ....................25

*Waganfeald v. Gusman*,
674 F.3d 359 (5th Cir. 2011)....................25

*White v. Pauly*,
580 U.S. 73 (2017)....................25

*Zorn v. Linton*,
146 S. Ct. 926 (2026)....................25

**State Cases**

*Burch v. City of San Antonio*,
518 S.W.2d 540 (Tex. 1975)....................25

*Central Power & Light Co. v. City of San Juan*,
962 S.W.2d 602 (Tex. App.—Corpus Christi 1998, pet. dism'd) ....................25

*City of Amarillo v. Martin*,
971 S.W.2d 426 (Tex. 1998) ....................25

*City of Austin v. Powell*,
704 S.W.3d 437 (Tex. 2024) ....................25

*City of Galveston v. the State of Texas*,
217 S.W.3d 466 (Tex. 2007)....................25

*City of Houston v. Davis*,
No. 01–13–00600–CV, 2014 WL 1678907 (Tex.App.-Houston [1st Dist.] Apr. 24, 2014, no. pet. h.) (mem. op.)....................25

*City of LaPorte v. Barfield*,
898 S.W.2d 288 (Tex. 1995) ....................25

*City of San Antonio v. Hartman*,
201 S.W.3d 667 (Tex. 2006) ....................25

*City of San Antonio v. Maspero*,
640 S.W.3d 523 (Tex. 2021)....................25

*City of San Antonio v. Rodriquez*,
856 S.W.2d 552 (Tex. App. — San Antonio 1993, writ denied) ....................25

*City of Sugarland v. Ballard*,
174 S.W.3d 259 (Tex. App. – Houston [1st Dist.] 2005, no pet.) ....................25

*City of Watauga v. Gordon*,
434 S.W.3d 586 (Tex. 2014)....................25

*Dallas Area Rapid Transit v. Whitley*,
104 S.W.3d 540 542 (Tex. 2003) ....................25

*Dallas County Mental Health and Mental Retardation v. Bossley*,
968 S.W.2d 339 (Tex. 1998) ....................25

*DeWitt v. Harris County*,
904 S.W.2d 650 (Tex. 1995)....................25

*Dillard v. Austin Independent School Dist.*,
806 S.W.2d 589 (Tex. App. -- Austin 1991, writ denied) ....................25

*Morgan v. City of Alvin, Texas*,
175 S.W.3d 408....................25

*Quested v. City of Houston*,
440 S.W.3d 275 (Tex. App. – Houston [14th Dist.] 2014, no pet.)....................25

*Reed v. Prince*,
194 S.W.3d 101 (Tex. App. – Texarkana 2006, no pet.)....................25

*Texana Cmty. MHMR v. Silvas*,
62 S.W.3d 317 (Tex. App. – Corpus Christi 2001, no pet.) ..............................25

**Constitutions**

Fourteenth Amendment ..................................................................... 1, 25

Texas Constitution ..................................................................................25

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 101.021 ..................................................25

TEX. CIV. PRAC. & REM. CODE § 101.055 ..................................................25

TEX. CIV. PRAC. & REM. CODE § 101.057 ..................................................25

TABLE OF EXHIBITS

EXHIBIT 1- Plaintiff Robert Harvey Deposition

EXHIBIT 2- Galveston Fire Department Incident Report No. 2404074-CITY 4-15

EXHIBIT 3- Chief Roy statement-CITY 453

EXHIBIT 4- Chief Roy Deposition Transcript

EXHIBIT 5- Plaintiff's cell phone recording; -CITY 105

EXHIBIT 6- Rebman's cell phone recording. - CITY 108

EXHIBIT 7- Parking lot surveillance video- CITY 104

EXHIBIT 8- Officer Nabiel Alawar Body Worn Camera Recording- CITY 464

EXHIBIT 9- Photos of Plaintiff on 6.22.24

EXHIBIT 10- Galveston FD Administrative Discipline Report- CITY 529-538

EXHIBIT 11- Galveston General City Ordinances – CITY 342-413

EXHIBIT 12- Photographs of Fire Vehicle on 6.22.24

EXHIBIT 13- Det. Rogers CID Report No.24-003697

EXHIBIT 14- Drug & Alcohol Screening Results--City 528 and City 341.

## SUMMARY OF THE ARGUMENT

2. The summary judgment record establishes that Defendants are entitled to summary judgment in their favor. There is no evidence that Battalion Chief Roy violated the Plaintiff's due process rights or clearly established federal law. And there is no evidence that the City of Galveston's policymaker ratified any due process deprivation Battalion Chief Roy committed. Moreover, the City is immune from Plaintiff's claims asserted under Texas law. For these reasons, the City and Chief Roy are entitled to summary judgment in their favor.

## NATURE AND STAGE OF THE PROCEEDING

3. Plaintiff filed suit on March 3, 2025, asserting claims against Galveston Fire Department Battalion Chief Roy and the City of Galveston. [Doc. 1]. In response to Plaintiff's claims, Defendants filed a motion to dismiss for failure to state a claim [Doc. 8], which the Court granted, in part. [Doc. 17]. After the Court's Order on the motion to dismiss based on the pleadings, the claims remaining in the lawsuit were: (1) Fourteenth Amendment due process claim against Battalion Chief Roy; (2) a claim against the City based upon the City's alleged ratification of Battalion Chief Roy's alleged violation of the Fourteenth Amendment; and (3) claims against the City asserted under Texas law based on alleged negligence. [Doc. 17].

## STATEMENT OF FACTS

4. Plaintiff Robert Harvey operates a social media business in which he broadcasts police actions, embellished with his commentary regarding the conduct, on social media platforms in hopes of gaining views which social media

companies, like Facebook and YouTube, measure and pay Plaintiff per "view" for posted content. Ex. 1 at pp. 17 at ¶5-25- 18; pp. 44 at ¶¶5-25. Just after midnight, on June 22, 2024, Plaintiff and Bruce Rebman were "cop watching" in hopes of finding Galveston police activity to broadcast, with commentary, for monetary gain. Ex. 1 at ¶¶14-25; Ex. 4, at pp.69 ¶¶17-21.

5. After midnight, on June 22, 2024, Battalion Chief Roy and several other firefighters responded to a reported structure fire on 61st Street in Galveston. Ex. 2, at p.3. Battalion Chief Roy was driving a City fire department Dodge Ram pickup truck plainly identified as an authorized emergency vehicle operating emergency lights with audible warning equipment and he traveled to the general area of the reported fire. Ex. 3; Ex. 4, at pp.25 at ¶¶16-25 to p.17.

6. Because the exact location of the fire was yet unknown, Battalion Chief Roy temporarily stopped his truck partially on the northbound shoulder of 61st street and partly in a driveway of a retail shopping center. The emergency lights on his fire truck were activated and operating while Battalion Chief Roy was attempting to determine the exact location of the reported structure fire. Ex. 3; Ex. 4, at pp.25 at ¶¶16-25 to p.17; p. 27 at ¶¶7-25; Ex. 5 at 0:00-0:28; Ex. 7 at 1:26-1:46.

7. Fire crews were still arriving to the scene and began searching for the location of the fire, when Chief Roy observed two males, later identified as the Plaintiff and Rebman, walking toward the location where firefighters were searching for the reported. In doing so, Plaintiff and Rebman walked past Chief Roy's marked emergency vehicle with activated emergency lights operating. Ex. 1,

at pp.78 at ¶¶5-6; Ex. 3; Ex. 4, at 26 at ¶¶18-25 to p.27 at ¶1-24; Ex. 5 at 00:00-00:30; Ex. 7 at 1:50 to 2:03.

8. To prevent Plaintiff and Rebman from entering an area in which fire apparatus was located and being positioned and where firefighters were searching for a fire, Battalion Chief Roy made an instantaneous decision to use the truck's air horn to direct Plaintiff and Rebman away from the fire investigation scene; however, when Battalion Chief Roy attempted to activate the air horn, he unintentionally activated the emergency siren. Ex. 3; Ex. 4, at p.46 at ¶¶8-25, p.56 at ¶¶23-25 to p.57 at p.58 at ¶¶1-5; Ex. 5 at 00:35-00:38; Ex. 7 at 1:55 to 2:03. Seconds later, Chief Roy again attempted to direct Plaintiff and Rebman to stay away from the active scene by using the air horn but again Chief Roy mistakenly activated the siren alert, which is louder than the air horn. Ex. 5 at 00:35-00:38; Ex. 4, at p.46 at ¶¶8-25, p.56 at ¶¶23-25 to p.57 at p.58 at ¶¶1-5.

9. Plaintiff became irate due to use of the siren. Ex. 1, at pp.76 at ¶¶14-25 to p.77 at ¶1-3; Ex. 5 at 00:30-00:41; Ex. 7 at 2:00-2:10. Although Plaintiff acknowledged Battalion Chief Roy was under no obligation to roll the window down to offer a verbal warning for Plaintiff to move out of firefighters' way, nonetheless Plaintiff walked back to Battalion Chief Roy's truck. While standing in the driveway to the retail shopping center, Plaintiff made an offensive gesture with a finger, and yelled at Battalion Chief Roy, demanding his name and badge number so Plaintiff could file a complaint against Chief Roy. Ex. 1, at pp. 78 at ¶¶7-20, pp. 81-82; Ex. 5; Ex.6; Ex. 7 at 2:00-2:40.

10. All-the-while, Chief Roy continued to actively receive fire radio transmissions involving firefighters trying to locate the fire, so a need existed to prevent bystanders from disrupting fire operations as Plaintiff meandered about the active fire scene. Ex. 4 at p.47 at ¶¶2-14, p.50 at ¶¶14-25; Ex. 5 at 00:28-00:40. Chief Roy attempted to make necessary changes to the emergency sound equipment to deploy the air horn, but his adjustments were ineffective and the siren against unintentionally sounded. Ex. 5 at 00:48-1:00; Ex. 4, at p.46 at ¶¶8-25, p.56 at ¶¶23-25 to p.57, p.58 at ¶¶1-5, p.59 at ¶¶4-18.

11. Plaintiff and Rebman walked along the driveway entrance to the retail shopping center while Plaintiff continued to yell at Chief Roy and approach Chief Roy's vehicle. Ex. 7 at 2:10-3:25. Onlookers began to congregate to watch Plaintiff's and Rebman's antics, and Plaintiff again moved when Chief Roy began repositioning his truck to enter the strip center where the fire was believed to be. Ex. 7 at 3:00-3:25; Ex. 1 at p.81 at ¶¶1-5. Because Plaintiff was in the driveway to the retail shopping center obstructing Chief Roy's vehicle from entering the shopping center where Chief Roy was attempting to park to further investigate the scene, Chief Roy backed his pickup truck slightly to enter the retail shopping center. Ex. 4, p.53 at ¶¶4-12, p.62 at ¶2-12; Ex. 5 at 2:02-2:10; Ex. 6; Ex. 7 at 3:20-3:30. Chief Roy proceeded to slowly drive into the retail shopping center by utilizing the space of the driveway Plaintiff was not blocking and which Chief Roy believed to be a clear path from Plaintiff's position. Ex. 3; Ex. 4, p. 74 at ¶¶10-22; Ex. 5 at 2:02-2:10; Ex. 6; Ex. 7 at 3:30-3:35. As Chief Roy's truck drove past

Plaintiff, Plaintiff did not fall, stumble, flail or flinch, but instead stood as Chief Roy's truck passed Plaintiff. Ex. 5 at 2:02-2:10; Ex. 7 at 3:30-3:3:37.

12. Plaintiff alleges Chief Roy "basically attacked him with his truck," but stated "I'm really not hurt anywhere," when speaking to officers shortly thereafter. Ex. 7, at 2:58-3:30. Plaintiff claims he tried to get away from Chief Roy's truck but Chief Roy's front right bumper hit Plaintiff's right knee and camera tripod, and Plaintiff further claimed Chief Roy's passenger side truck mirror hit Plaintiff's right elbow. Ex. 5 at 2:02-2:10; Ex. 6; Ex. 7, at 0:00-3:30. But photographs depicted no apparent sign of injury visible on Plaintiff's arm, elbow, or knee. Exs. 9, 10.

13. Plaintiff and Rebman continued their efforts to engage with Chief Roy by yelling at his truck and demanding police officers and firefighters on the scene identify and arrest Chief Roy. Ex. 5 at 2:10-3:06. A police officer informed Plaintiff and Rebman that the firefighters are "investigating a fire right now." Ex. 5 at 3:05-3:11.

14. After finishing his work addressing the fire, Chief Roy drove out of the parking lot and Chief Roy then deliberately sounded the siren as a "f*** you" to Plaintiff and the Plaintiff responded by again displaying his middle finger to Chief Roy as he departed. Ex. 5 at 3:07-3:12; Ex. 4, p.79 at ¶¶2-9. Following the incident, Chief Roy submitted to urinalysis to test for the presence of illegal drugs which came back negative. Ex. 14. Similarly, Chief Roy submitted a breath sample to detect the presence of alcohol which detected no alcohol. Ex. 14.

15. Investigators employed by the Galveston police department investigated the incident and determined Chief Roy's vehicle "made slight contact with the individual's tripod." Ex. 11, at p. 6. The City of Galveston Fire Chief who had authority to discipline Battalion Chief Roy, Fire Chief Mike Varela counseled Chief Roy and further issued a two day-suspension without pay based on Chief Roy's use of the siren and not stopping to address the Plaintiff's complaints, which Fire Chief Varela characterized as a violation of Fire Department policy generally prohibiting being discourteous or disrespectful to citizens. Ex. 11, at p.3.

SUMMARY JUDGMENT STANDARD

16. To avoid summary judgment, Plaintiff must identify "significant probative evidence" demonstrating a genuinely disputed material fact that presents a triable issue. *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020). Factual disputes are material if they "might affect the outcome of the suit under the governing law," and they are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). After a motion for summary judgment is filed, the non-movant must identify specific evidence showing a genuine issue for trial. *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir. 1997).

17. Substantive law will dictate facts that are material. *Anderson,* 477 U.S. at 248. In this case, objective constitutional and immunity standards, viewed from the perspective of a reasonable firefighter on the scene, *Benfer v. City of Baytown*, 120 F.4th 1272, 1282 (5th Cir. 2024), provide relevant context for identifying

requisite material evidence, and only disputes over those material facts can preclude summary judgment. *See Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005). The Court must credit undisputed material facts supporting summary judgment. *Eversley v. Mbank,* 843 F.2d 172, 173–74 (5th Cir. 1988). "Although [courts] review the evidence in the light most favorable to the non-moving party, [courts] assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

ARGUMENT AND AUTHORITIES

## I. No evidence supports a Fourteenth Amendment claim.

18. The Supreme Court "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id at* 847.

19. "This is a deliberately high bar." *Est. of Parker v. Miss. Dep't of Pub. Safety*, 140 F.4th 226, 244 (5th Cir. 2025). This is so because, "[o]ur Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability

for injuries that attend living together in society." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

20. "While the measure of what is conscience shocking is no calibrated yard stick, it does, as Judge Friendly put it, point the way." *Lewis*, 523 U.S. at 847. "Conduct sufficient to shock the conscience for substantive due process purposes has been described in several different ways. It has been described as conduct that violates the decencies of civilized conduct; conduct that is so brutal and offensive that it [does] not comport with traditional ideas of fair play and decency; conduct that interferes with rights implicit in the concept of ordered liberty; and conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 867 (5th Cir. 2012).

21. "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." *Lewis*, 523 U.S. at 848. The Supreme Court has "accordingly rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and has held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 848–49. "Indeed, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates constitutional protections."

*Estate of Parker*, 140 F.4th at 244. As detailed above, *"Lewis* sets out the threshold question: whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999). Fatal to his claims, no such evidence exists here.

22. "'While the measure of what is conscience shocking is no calibrated yard stick,', it is not enough that the conduct 'offend[s] some fastidious squeamishness or private sentimentalism.'" *M.D. v. Abbott*, 907 F.3d 237, 251 (5th Cir. 2018). Here, no such evidence exists that would even remotely suggest that Chief Roy's act of *unintentionally* sounding a siren, instead of an air horn, to alert the Plaintiff to stay away from an active fire scene would rise to the level of "conscious shocking" behavior reserved for a Fourteenth Amendment claim. Ex. 5 at 00:35-1:00. Not even close. *Compare Rochin v. California,* 342 U.S. 165, 72 (1952) (police officers ordered doctors to pump Defendant's stomach to induce Defendant to vomit two capsules of morphine that he had previously swallowed "shocks the conscious") with *Lewis*, 523 U.S. at 848 (no "conscious shocking" behavior in police pursuit case when Court found that Defendant officer had done nothing to cause Plaintiff's high-speed and reckless evasion of law enforcement in a vehicle); see also *Doe ex rel. Magee,* 675 F.3d at 867 (collecting Fifth Circuit and out of circuit decisions that recognized "conscious shocking" behavior).

23. Plaintiff's intentional decision to stand in the middle of the retail shopping center driveway—an action which caused Chief Roy to slowly navigate around the

Plaintiff, is the exact injury causing conduct that prohibits a finding of conscious shocking behavior against Chief Roy's responsive action to maneuver around the Plaintiff. *Lewis*, 523 U.S. at 835 ("While prudence would have repressed the reaction, [the officer's] instinct was to do his job, not to induce [Plaintiff's] lawlessness, or to terrorize, cause harm, or kill). Plaintiff cannot claim victim to a reactive response which Plaintiff created. There is no evidence that Battalion Chief Roy's conduct rose to the level of conscious shocking behavior required to support a Fourteenth Amendment due process claim. *See id.*

## II. Plaintiff fails to refute Battalion Chief Roy's qualified immunity.

24. *Arguendo*, if the Court finds a genuine issue of disputed material fact exists regarding whether Chief Roy may have violated the Fourteenth Amendment, nevertheless Chief Roy is entitled to summary judgment in his favor because Plaintiff has not established that Chief Roy violated clearly established law. Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Swint v. Chambers County Commission*, 514 U.S. 35, 42 (1995); *accord McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

25. "The plaintiff alone bears the burden of refuting qualified immunity**.**" *Perdomo,*163 F.4th at 924. "And the burden is heavy." *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro LLC v. Hilton,* 568 F.3d 181, 194 (5th Cir. 2009) (citations omitted).

"When a defendant moves for summary judgment and identifies a lack of evidence to support the plaintiff's claim on an issue for which the plaintiff bears the burden of proof, the defendant is entitled to summary judgment." *Smith v. Harris County,* 956 F.3d 311, 316 (5th Cir. 2020) (cleaned up).

26. "Qualified immunity includes two inquiries. The first question is whether the officer violated a constitutional right," *Id.* at 874, ending the inquiry in this litigation before it starts because Plaintiff failed to establish that Chief Roy violated the Fourteenth Amendment. *See Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) ("Since *Pearson* [*v. Callahan*, 555 U.S. 223, 231 (2009)], a reviewing court may tackle these questions in whatever order it deems most expeditious.").

27. "The second question—whether the officer violated clearly established law—is a doozy." "To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn v. Linton*, 146 S. Ct. 926, 930 (2026) (citing *Escondido* v. *Emmons*, 586 U. S. 38, 43 (*per curiam*) (internal quotation marks omitted)). "The relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.' *Id* (citing *District of Columbia* v. *Wesby*, 583 U. S. 48, 63 (2018) (internal quotation marks omitted).

28. "Principles stated generally, such as that 'an officer may not use unreasonable and excessive force,' do not suffice." *Id* (citing *Kisela* v. *Hughes*, 584 U. S. 100, 105 (2018) (*per curiam*)). "[Plaintiff] must be able to point to controlling

authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity,' *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011), and that places the statutory or constitutional question 'beyond debate.'" *Waganfeald v. Gusman*, 674 F.3d 359, 371-72 (5th Cir. 2011) (quoting *al- Kidd*, 563 U.S. at 741); *Sheehan*, 575 U.S. at 611 n. 3. "[T]he clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

29. "To be clearly established, a right must be sufficiently clear that every reasonable offic[er] would [have understood] that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (emphasis added) *(citing Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson*, 483 U.S. at 640)). "In short, officers receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'know[ n]' that it proscribed their specific conduct." *Zorn*, 146 S. Ct. at 930 (citing *Sheehan*, 575 U. S. at 616)). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

30. Plaintiff bears the burden of negating Chief Roy's immunity. *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). "[Plaintiff] must clear a significant hurdle to defeat qualified immunity." *Brown v. Lyford,* 243 F.3d 185, 190 (5th Cir. 2001). To clear that hurdle, Plaintiff must demonstrate through the governing legal

standards that the evidence establishes that no reasonable officer could have believed the officers' respective actions were lawful. *See Saldana v. Garza*, 684 F.2d 1159, 1164-65 (5th Cir. 1982).

31. Not only has the Plaintiff failed to establish "the legality of his conduct was clearly established," *Sorenson v. Ferrie*, 134 F.3d 325, 330 (5th Cir. 1998), Plaintiff has not shown the mere mistakes Chief Roy made violated clearly established constitutional law, as Plaintiff must to avoid summary judgment. "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)); accord *Heien*, 574 U.S. at 57. While Chief Roy bears no burden to establish immunity, the legal authorities cited herein demonstrate that Chief Roy did not violate clearly established law.

## III. No evidence supports ratification claim against the City.

32. Ratification is a rarely applicable theory of governmental liability that requires admissible evidence which proves a policymaker approved of an officer's unconstitutional conduct, and the basis for unconstitutional conduct, knowing the actions at issue are unconstitutional. *See Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017). Even "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848; accord *Fraire*, 957 F.2d at 1278–79.

33. To prove a ratification claim, Plaintiff must prove through admissible evidence "the authorized policymakers approve[d] a subordinate's decisions and the basis for it," and only if so, will the policymaker's "ratification…be chargeable to the municipality because [the policymaker's] decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

**A. Galveston's City Council is the City's policymaker.**

34. "The existence of official policymaking authority is a question of law to be decided by the court." *Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003). "Usually a council or commission will be the governing body to which responsibility may be attached" *Bennett*, 728 F.2d at 767. State courts generally recognize that a city's council is customarily the policymaker for a city. *See City of San Antonio v. Rodriquez*, 856 S.W.2d 552 (Tex. App. — San Antonio 1993, writ denied). "It is fundamental that a municipal corporation possesses no power that is not conferred by its charter or by the general laws under which it was formed." *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 613 (Tex. App.—Corpus Christi 1998, pet. dism'd). "Liability must rest on official policy, meaning on the city government's policy, and not on the policy of an individual official." *Id.* at 55; *see also* TEX. LOC. GOV'T CODE CHAPTERS 21 and 51

37. A city's charter and code of ordinances can serve as a source of substance law which identifies a city policymaker. *Id.*; *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5th Cir. 2008). A governing body "may delegate to others the right to perform acts and duties necessary to the transaction of the municipality's

business… [but it] cannot delegate the right to make decisions affecting the transaction of city business." *Burch v. City of San Antonio*, 518 S.W.2d 540, 543 (Tex. 1975).

38. A governmental employee is not a "policymaker" unless the governmental entity, through its lawmakers, has **delegated exclusive policymaking authority** to that employee such that the City cannot review the decisions or actions of the employee. *See Worsham*, 881 F.2d at 1340-41; *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). "[P]olicymaking authority is more than discretion, and it is far more than the final say-so." *See Bennett*, 728 F.2d at 769. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *Praprotnik*, 485 U.S. at 127.

39. The City's Charter and Ordinances evidence the powers and duties of city officials. Ex. 11 The Charter provides City Council with all powers and authority conferred on or possessed by the City, other than powers expressly conferred upon other City Officers by the Charter. *Id.* The Charter expressly reserves to City Council the power to inquire into the official conduct of any department, agency, office, officer, or employee of the City, and into any other matters of proper concern to City government. *Id* at Art. II, Sec. 5. The Council operates as a singular body and acts through ordinances. Id. at Art. II, Sec. 4. No Charter, Ordinance provision, or Resolution has delegated the City's policymaking authority to the Chief of the City's Fire Department. Ex. 11.

40. Galveston Fire Chief Mike Varela's operational executive authority is subordinate to City Council's policymaking authority. Chief Varela supervised the day-to-day operations of a department of the City, its fire department, in conformance with policies established by Council and requirements of federal, state, and local law. Plaintiff has not established that the City Council has delegated its policymaking authority to any individual, and certainly not to Battalion Chief Roy testified he does not even have authority to initiate discipline against any firefighter. Ex. 11. The City's elected Council is the City's policymaker.

**B. There is no evidence the City's policymaker ratified unconstitutional conduct, much less under the facts here which are unlike the "extreme factual situation" for which this claim is reserved.**

41. Plaintiffs do not provide evidence which proves a Constitutional deprivation, much less City policymaker culpability in endorsing obvious unconstitutional conduct. Certainly, the evidence which records the entire incident made the basis of this suit, Ex. 5-7, does not invoke application of *Grandstaff supra*, since its "precedent has limited the theory of ratification to 'extreme factual situations.'" *Peterson*, 588 F.3d at 848 (quoting *Snyder*, 142 F.3d at 798).

35. More fatal to Plaintiff's claim, investigators employed by the Galveston police department investigated the incident, determined Chief Roy's vehicle "made slight contact with the individual's tripod." Ex. 11, at p. 6, and the City of Galveston's Fire Chief Mike Varela—who had the executive authority to discipline Chief Roy—in fact disciplined Chief Roy by counseling Chief Roy and issuing a two day-suspension without pay based on Chief Roy's use of the siren and not stopping to address the

Plaintiff's complaints, which Fire Chief Varela characterized as a violation of Fire Department policy generally prohibiting being discourteous or disrespectful to citizens. Ex. 11, at p.3. Disciplining Chief Roy after a post-incident investigation is the opposite of ratification of misconduct.

36. Moreover, "[u]nless the subordinate's actions are sufficiently extreme—for instance, an obvious violation of clearly established law—a policymaker's ratification or defense of his subordinate's actions is insufficient to establish an official policy or custom." *Hobart v. City of Stafford*, 916 F. Supp. 2d 783, 795–96 (S.D. Tex. 2013) (Ellison, J.). Chief Roy's emergency vehicle operation is not an "extreme factual situation," in the circumstances of this case. *Compare Peterson v. City of Fort Worth,* 588 F.3d 838, 848 (5th Cir. 2009) (did not find ratification where officer delivered a knee strike while restraining suspect); *Grandstaff v. Borger*, 767 F.2d 161 (5th Cir. 1985)(finding ratification when facts included excessive use of gunfire on truck and killing an innocent bystander); *Snyder,* 142 F.3d at 798 (did not find ratification in case which officer shot feeling suspect in back); *Allen v. Hays*, 65 F.4th 736, 749-750 (5th Cir. 2023) (did not find ratification where officer shot unarmed suspect and the certificate of bravery was not approval of the basis for the conduct). "[A] policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848 (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1161-62 (5th Cir. 1986)).

## IV. There is no evidence that supports a claim against the City under Texas law.

37. "A Texas governmental unit is generally immune from tort liability unless the legislature has somehow waived immunity," *Forgan v. Howard Cnty*., 494 F.3d 518, 520 (5th Cir. 2007). *See City of Galveston v. the State of Texas*, 217 S.W.3d 466, 468 (Tex. 2007); *City of LaPorte v. Barfield*, 898 S.W.2d 288, 291 (Tex. 1995). "The plaintiff has the burden of demonstrating how the TTCA has waived a governmental unit's immunity from suit." *Reed v. Prince*, 194 S.W.3d 101, 104 (Tex. App. – Texarkana 2006, no pet.). Governmental immunity extends to all political subdivisions derived from the Texas Constitution or laws of the State of Texas. *Dillard v. Austin Independent School Dist*., 806 S.W.2d 589, 593 (Tex. App. -- Austin 1991, writ denied). "We take as our starting point the premise that in Texas a governmental unit is immune from tort liability unless the Legislature has waived immunity." *Id; Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998)).

38. "This high standard is especially true for home-rule cities like Galveston." *Galveston*, 217 S.W.3d at 469. "This heavy presumption in favor of immunity arises not just from separation-of-powers principles but from practical concerns." *Id*. "The extent to which any particular city, [...], should pay damages involves issue the Legislature is better able to balance." *Id*.

39. So, "[i]n a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a waiver of immunity." *City of Sugarland v. Ballard*, 174 S.W.3d 259, 262 (Tex. App. – Houston [1st Dist.] 2005,

no pet.) (quoting *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540 542 (Tex. 2003)). Therefore, the City of Galveston is protected from liability by governmental immunity unless the Plaintiff affirmatively establishes a basis for waiver of governmental immunity. *See Texana Cmty. MHMR v. Silvas*, 62 S.W.3d 317, 320 (Tex. App. – Corpus Christi 2001, no pet.).

40. To establish a basis for waiver of governmental immunity, the Plaintiff must comply with the requirements of subchapter B of the Texas Tort Claims Act, including the requirement that the governmental employee who is alleged to have caused an injury at issue "would be personally liable to the claimant according to Texas law." *See* TEX. CIV. PRAC. & REM. CODE § 101.021((1)(B); *Martinez v. Maverick County*, 507 Fed. Appx. 446, 449 (5th Cir. 2013); *DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995).

41. If the Plaintiff could satisfy the threshold requirements of TEX. CIV. PRAC. & REM. CODE § 101.021 in subchapter B of the Tort Claims Act, statutory exclusions and exceptions within subchapter C of the Act serve as a further bar to governmental immunity in this case. These exclusions and exceptions provide additional defenses to the City.

**A. Chief Roy's use of the siren when leaving the scene provides no basis for waiver of the City's governmental immunity.**

42. After the altercations had occurred between the Plaintiff and Battalion Chief Roy during the time Chief Roy was responding to the emergency call, including the instant when Chief Roy drove his vehicle past the Plaintiff and Plaintiff claimed the emergency vehicle made contact with the Plaintiff or his bipod, later Chief Roy

deliberately sounded the siren for no firefighting purpose as he drove out of the parking lot. While that action was not justified, there is no evidence that sounding the siren at that time caused personal injury to the Plaintiff, so that action provides no basis for waiver of the City's governmental immunity under TEX. CIV. PRAC. & REM. CODE § 101.021 in subchapter B of the Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE § 101.057; *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014); *Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir. 1994).

43. And even if this action could reasonably be construed as proximately causing personal injury to Plaintiff, nonetheless the City still retains its immunity because there is no waiver of governmental immunity for an intentional tort by a governmental employee due to TEX. CIV. PRAC. & REM. CODE § 101.057 in subchapter C of the Act. Texas courts have clearly held that a plaintiff cannot circumvent TEX. CIV. PRAC. & REM. CODE § 101.057 by mischaracterizing intentional torts as mere negligence. *See Gordon*, 434 S.W.3d at 587; *Morgan v. City of Alvin, Texas*, 175 S.W.3d 408, at 418-19 (Tex. App. – Houston [1st Dist., no pet.); *accord, Bustillos v. El Paso Cnty. Hosp. Dist.*, 891 F.3d 214, 223 (5th Cir. 2018).

44. The evidence proves Chief Roy intentionally sounded the siren as he drove from the parking lot. There is no evidence his action at that time was negligent, so the City is immune from a claim premised on the last use of the siren. *See id*.

**B. Plaintiff's claims are barred by TEX. CIV. PRAC. & REM. CODE 101.055.**

45. Another exclusion barring immunity that applies in this suit is TEX. CIV. PRAC. & REM. CODE § 101.055. The Texas Tort Claims Act excludes waiver of governmental immunity "from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others." TEX. CIV. PRAC. & REM. CODE § 101.055(2); *City of Austin v. Powell*, 704 S.W.3d 437, 448-62 (Tex. 2024); *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529-32 (Tex. 2021); *City of Amarillo v. Martin*, 971 S.W.2d 426, 429 (Tex. 1998).

46. "[P]laintiffs bear the burden of negating" exclusions. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022). This provision "withdraws the waiver of immunity unless (1) the [municipal employee] 'did not comply with the laws and ordinances applicable to emergency action,' or (2) in the absence of such laws, 'the [municipal employee] acted 'with conscious indifference or reckless disregard for the safety of others.'" *City of Austin v. Powell*, 704 S.W.3d 437, 449 (Tex. 2024). "The plaintiff bears the burden of negating Section 101.055's applicability." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022); *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex. App. – Houston [14th Dist.] 2014, no pet.).

47. Although the TTCA does not define "emergency action," the Texas Supreme Court has interpreted the term "emergency" broadly. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 673 (Tex. 2006). "The Legislature has determined that

the public good will be better served by encouraging public employees to take immediate action in emergency situations." *Hartman*, 201 S.W.3d at 673. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672-73 (Tex. 2006) (holding an emergency situation existed as a matter of law under section 101.055(2) when unprecedented flooding was present and the city had officially declared a disaster); City of Houston v. Davis, No. 01-13-00600-CV, 2014 WL 1678907 at *5 (Tex. App. – Houston [1st Dist.] April 24, 2014, no pet.)) (mem. op.) (holding officer was responding to an emergency situation when officer pulled over car in response to a report that the driver of the car had tried to run another vehicle off the road); Texas Department of Public Safety v. Little, 259 S.W.3d 236, 239 (Tex. App. – Houston [14th Dist.] 2008, no pet.) (holding dispatch call requesting assistance with a wanted person was an emergency call when officer testified without contradiction that law enforcement officers consider such a request to be an emergency).

48. Battalion Chief Roy's response to a reported structure fire was action of a Galveston employee responding to an emergency call or reacting to an emergency situation. There is no evidence that Chief Roy violated any ordinance or statute applicable to the emergency action in question. Likewise, there is no evidence Chief Roy acted with conscious indifference or reckless disregard for the safety of others. Instead, the evidence establishes that Chief Roy repeatedly cautioned Plaintiff to yield to Chief Roy's emergency vehicle and to move out of the active fire scene. Instead, the evidence demonstrates that Chief Roy re-positioned his emergency

vehicle for the express purpose of driving around the Plaintiff at the fire scene but the Plaintiff insisted on obstructing Chief Roy's efforts to perform firefighting duties. "[C]onscious indifference or reckless disregard 'require[s] proof that a party *knew* the relevant facts but did not care about the result.'" *Powell,* 704 S.W.2d at 456 (quoting *City of San Antonio v. Hartman,* 201 S.W.3d 667, 672 n. 19 (Tex. 2006)) (alterations and emphasis by the Court). Plaintiff failed to adduce evidence supporting a finding Chief Roy acted with conscious indifference or reckless disregard in operating the emergency vehicle when the Plaintiff claims to have been contacted by the vehicle. Therefore, the City is immune from Plaintiff's state law claims.

### C. Plaintiff's claims are barred by TEX. CIV. PRAC. & REM. CODE § 101.021.

49. Moreover, the City is immune even if the Court were to find that TEX. CIV. PRAC. & REM. CODE § 101.055 does not preserve the City's immunity. Regardless of application of § 101.055, Battalion Chief Roy "would [not] be personally liable to Plaintiff according to Texas law because Chief Roy would be protected by Texas common law official immunity. *See* TEX. CIV. PRAC. & REM. CODE § 101.021((1)(B); *Martinez*, 507 FED. APPX. at 449; *DeWitt*, 904 S.W.2d at 653.

50. As Defendants discussed *supra* regarding qualified immunity, Plaintiff has not refuted Battalion Chief Roy's individual immunity. The Fifth Circuit has consistently held, "official immunity in Texas is substantially the same as qualified immunity under federal law." *See Perdomo v. City of League City, Texas*, 163 F.4th 921, 926 (5th Cir. 2026) (quoting *Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir.

1997)). Accordingly, Plaintiff's state law claims against the City are barred by TEX. CIV. PRAC. & REM. CODE § 101.021, as well as TEX. CIV. PRAC. & REM. CODE 101.055.

CONCLUSION AND PRAYER

51. For these reasons, Defendants move the Court to dismiss Plaintiff's claims, with prejudice, and grant summary judgment in Defendants' favor.

Respectfully submitted,

*/s/ Norman Ray Giles*
William S. Helfand
Attorney-in-Charge
State Bar of Texas No. 09388250
S.D. Texas No. 8791
Bill.Helfand@lewisbrisbois.com
Norman Ray Giles
State Bar of Texas No. 24014084
S.D. Texas No. 26966
Norman.Giles@lewisbrisbois.com
Randy E. Lopez
State Bar of Texas No. 24091829
S.D. Texas No. 3369137
randy.lopez@lewisbrisbois.com

OF COUNSEL:

LEWIS BRISBOIS BISGAARD & SMITH, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767
(713) 759-6830 (Fax)
*Attorneys for Defendants*
City of Galveston, Texas
Chief William Roy

CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been forwarded to the following counsel of record via e-mail on July 1, 2026, in accordance with the District's ECF service rules.

*/s/ Norman Ray Giles*
Norman Ray Giles